UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerome Finnigan, | C/A No. 5:15-cv-3515-BHH-KDW |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| United States of America, | |
| Defendant. | |

Jerome Finnigan ("Plaintiff"), a pro se prisoner, brings this action alleging claims pursuant to the Federal Torts Claims Act ("FTCA").[1] This matter is before the court on Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment, filed on May 17, 2013.[2] ECF No. 46. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff, on March 30, 2016, of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendant's Motion. ECF No. 50. On April 8, 2016, Plaintiff filed a Response in opposition to Defendant's Motion. ECF No. 53. Defendant filed a Reply to Plaintiff's Response on April 25, 2016, and Plaintiff filed a Sur Reply on May 13, 2015. ECF Nos. 55, 56. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e) (D.S.C.). Accordingly, the undersigned enters this Report and Recommendation for the court's review.

---

[1] 28 U.S.C. § 1346 and 28 U.S.C. §§ 2671-2680.

[2] Because the court has considered matters outside of the pleadings, the undersigned is considering the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

I. Factual Background

Plaintiff is presently confined at Federal Correctional Institution Engle in Littleton, Colorado. He was formerly incarcerated at Federal Correctional Institution Edgefield, in Edgefield, South Carolina ("FCI-Edgefield"). ECF No. 1. In his Amended Complaint,[3] filed on March 9, 2016, ECF Nos. 40, 40-1, Plaintiff alleges that his left wrist was permanently injured as the result of a fall on an icy/snowy sidewalk while returning to his living quarters following lunch on February 12, 2014 ("the slip and fall"). According to Plaintiff, two fellow inmates, John McGuire and Joseph Carlisle, assisted him in getting up after the slip and fall. Am. Compl. 1, 2, ECF No. 40. Plaintiff contends that the slip and fall was caused by the failure of officials at FCI-Edgefield to properly maintain the walkways and by their ordering prisoners to walk to the food service area to get their lunch without clearing the sidewalks. *Id*. at 2. Plaintiff alleges that he reported his injury to two different corrections officers (Reese and Wright), but that neither of them obtained medical treatment for him. *Id*. According to Plaintiff, he self-treated his injury with over-the-counter pain medication and hot and cold compresses for two weeks, but when it did not improve, he reported to the medical personnel at FCI-Edgefield. *Id*. at 2-3. According to Plaintiff, his wrist injury required surgical intervention and will ultimately require additional surgery. *Id*. at 3. Plaintiff asserts that Defendant breached its duty to protect his safety and its duty to provide medical care and requests $550,000.00 in compensatory damages. *Id*. at 3-4.

II. Standard of Review

---

[3] In his original Complaint, Plaintiff also named the Warden of FCI-Edgefield as a plaintiff, ECF No. 1; however, Plaintiff disclaimed any intent to maintain a *Bivens* claim against the Warden, ECF No. 31 at 3, and the operative Amended Complaint, ECF No. 40, does not state any claim against the Warden. The only claims currently before the court are negligence-based claims against the Federal Government arising under the FTCA.

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact when none exists. *See* Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

    III.    Analysis

A.	The Parties' Contentions

Defendant contends that this case should be dismissed because Plaintiff did not properly exhaust his administrative remedies before the case was filed. Defendant contends that Plaintiff's original Tort Claim submission did not contain sufficient detail about the slip and fall to permit it to conduct an adequate investigation. ECF No. 46 at 9-10. Defendant further contends that if this court reaches the merits of Plaintiff's claims, it should find that Defendant did not breach any duty to Plaintiff because the conditions on which the slip and fall occurred were open and obvious and Defendant was not obligated to keep the sidewalks clear during ongoing inclement weather. *Id*. at 19-20. With regard to Plaintiff's medical treatment, Defendant contends that no breach of duty occurred because Plaintiff was never prevented from contacting medical personnel at FCI-Edgefield at any time after the alleged fall. *Id*. at 22-23. In its Reply to Plaintiff's Response to its Motion, Defendant contends that the Amended Tort Claim referenced by Plaintiff was not properly filed; however, insofar as Plaintiff relies on it as either an amended claim or a request for reconsideration, Plaintiff's Complaint was filed prematurely and not exhausted. ECF No. 55 at 3-5. Plaintiff responds that he adequately exhausted his administrative remedies as to both counts in his Amended Complaint and that his Amended Tort Claim was effective to increase his damages claim from $100,000.00 to $550,000.00. ECF Nos. 53 at 6-7; 56 at 1-3. Plaintiff also responds that he is not an invitee and the fact that he was required to walk to the dining room distinguishes this case from those cited by Defendant. ECF No. 53 at 8-9. Plaintiff further responds that law from other jurisdictions should not be applied to his negligence claim because South Carolina does not have as much snow and ice as do other places. ECF No. 53 at 8. Finally, Plaintiff responds that the Government breached its duty to provide

4

medical care when he was not sent to see medical personnel after he reported the injury to two different corrections officers. *Id*. at 9-10; ECF No. 56 at 3.

        B.     Discussion

            1.     Exhaustion of Administrative Remedies

A federal inmate who brings an FTCA claim is required to exhaust administrative remedies before proceeding in the District Court. *Robles v. Beaufort Mem. Hosp.*, 482 F. Supp. 2d 700, 706 (D.S.C. 2007). The FTCA prohibits the filing of a civil action against the government unless the underlying claim is "first presented" to the appropriate federal agency. *See* 28 U.S.C. § 2675(a). Where such a claim is not first presented to the appropriate agency, the District Court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject-matter jurisdiction. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (upholding dismissal of suit against Government where plaintiff had not exhausted available administrative remedies); *see also Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) (exhaustion requirement is jurisdictional). The exhaustion requirement under the FTCA is jurisdictional and may not be waived. *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990).

The regulations for filing an administrative claim under the FTCA are codified at 28 C.F.R. §§14.1-14.11. The regulation pertaining to presentation states:

> For purposes of the provisions of 28 U.S.C. §§ 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a). Regulations promulgated pursuant to the FTCA provide that a claim is presented "when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." 28 C.F.R. § 14.2(a). This provision has been interpreted by the courts to indicate that the claimant meets his burden if the notice "(1) is sufficient to enable the agency to investigate and (2) places a 'sum certain' value on her claim." *Ahmed v. United States*, 30 F.3d 514, 517 (4th Cir. 1994) (quoting *Adkins v. United States*, 896 F.2d 1324, 1326 (11th Cir. 1990)); *see also GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987) (holding that § 2675(a) requires a claimant to file "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim"); *Kokaras v. United States*, 980 F.2d 20, 22 (1st Cir. 1992) (holding that "timely-presented claim stating a sum certain is necessary for a court to have jurisdiction to entertain a suit against the United States under the FTCA"). One Circuit has found that "minimal notice" that "gives notice of the manner and general circumstances of injury and the harm suffered, and [contains] a sum representing damages" satisfies the statutory requirement for claim sufficiency. *Avery v. United States*, 680 F.2d 608, 610 (9th Cir. 1982) (where the claimant's medical records were not submitted with the filing, the claimant could still satisfy the burden of providing sufficient notice to the agency). Any cause of action that is "fairly implicit in the facts" is one that is properly presented for purposes of exhaustion. *Palay v. United States*, 349 F.3d 418, 426 (7th Cir. 2003) (internal citations and quotation marks omitted). The Seventh Circuit has held that if the claim would have been apparent to a "legally sophisticated reader" of the form, then the agency should be charged with notice of that claim and it should be found to have been exhausted. *Murrey v. United States*, 73 F.3d 1448, 1453 (7th Cir. 1996).

a.       Exhaustion of the Slip and Fall Claim

Defendant contends that the original claim form, a Standard Form 95, ECF No. 46-3, did not have sufficient detail about 1) witnesses to the slip and fall, 2) reports of the slip and fall to corrections officers, and 3) Plaintiff's medical-related claim to permit the BOP to investigate the claims. However, the undersigned has reviewed the record, disagrees with Defendant, and finds that the original claim form that Plaintiff submitted to the BOP's Southeast Regional Office on October 20, 2014 -- a Standard Form 95 -- contained sufficient information about the circumstances surrounding the slip and fall and the resulting injury to permit the agency to investigate. The form listed the date, time, and place of the slip and fall and contained a concise description of the weather and sidewalk conditions that Plaintiff contended caused the fall and resulting injury, which Plaintiff also adequately described. Additionally, the claim form listed two witnesses, a fellow inmate and the surgeon who operated on Plaintiff's wrist and contained a sum-certain damage for damages in the amount of $100,000.00. Admittedly, the form did not include any information about reports made to FCI-Edgefield authorities, but the form does not appear to require information about reports to officials and Defendant has presented no authority holding that a claimant must list information about incident reports to or contacts with authorities in order to satisfy the requirement that the claim be sufficient to permit the agency to investigate and this court has not found such authority. Rather, it appears that presentation of the "general circumstances of injury and the harm suffered" will suffice. *Avery v. United States*, 680 F.2d at 610. Plaintiff's original claim form provided adequate information about the manner and general circumstances of injury and the harm suffered to permit the BOP to investigate his slip and fall claim and therefore satisfied the FTCA exhaustion requirement as to the claim stated in Count One of the Amended Complaint. The merits of that claim will be discussed hereafter.

### b.     Exhaustion of the Medical Care Claim

However, nowhere on the original claim form does Plaintiff mention the facts or circumstances involved in Count II of the Amended Complaint relating to the medical care he received. This claim is separate and distinct from Plaintiff's claim regarding the slip and fall and resulting injury and, even though Plaintiff informed the BOP that his injury had required surgery, there is nothing on the claim form that would place the BOP on notice that Plaintiff was in any way dissatisfied with the medical care he received. Therefore, the undersigned finds that the medical-related claim raised in Court II of the Amended Complaint is not fairly implicit in the facts included on Plaintiff's original administrative claim form, this court has no subject-matter jurisdiction to consider it, and it should be dismissed without prejudice for failure to exhaust. *See, e.g.*, *Dondero v. United States*, 775 F. Supp. 144, 148 (D. Del. 1991) ("If single claim form is used for multiple claims against United States, it must set forth sufficient facts to warrant agency investigation and to constitute constructive notice of other theory of liability.") (citing *Johnson v. United States*, 594 F. Supp. 728, 730 (E.D.N.Y. 1984), *aff'd*, 788 F.2d 845 (2d Cir.), *cert. denied*, 479 U.S. 914 (1986) (claim for assault and battery did not preserve jurisdiction for negligent supervision)); *Little v. United States*, No. 5:11CV41, 2014 WL 4102377, at *20 (N.D.W. Va. Aug. 18, 2014) (negligence claim exhausted, but grievance process-related claim not mentioned and not "fairly implied by the . . . administrative complaint"). Because the medical claim was not exhausted, the undersigned will not discuss the merits of that claim.

### c.     The Amended Tort Claim

With regard to Defendant's assertion that Plaintiff failed to properly exhaust his administrative remedies based on his alleged August 6, 2015 submission of what Plaintiff refers to as an "Amended Tort Claim" and then filing this lawsuit only fifteen days later on August 31,

2015, ECF Nos. 53-1 at 5, 8; 55 at 4, the record discloses that the BOP has no record of having processed the claim form that Plaintiff attaches to his Response because he mailed it to the wrong address and did not thereafter send it to the correct address to begin the administrative process. ECF No. 55-1 at 2 (Affidavit of Tami Cassaro). The record does contain a letter dated August 18, 2015 in which a BOP attorney informs Plaintiff that she received an August 5, 2015 letter from him and that she was returning the submission to him because he sent it to the wrong address. ECF No. 55-2.[4] Plaintiff does not deny that he did not mail the Amended Tort Claim form to the BOP's Southeast Regional Office as he was directed, and he does not indicate that the Amended Tort Claim was ever processed or acted upon by the BOP. Instead, he argues in his Sur Reply (without evidentiary or legal support) that his mailing the form to the person who decided the Original Tort Claim was sufficient to constitute filing it with the BOP. ECF No. 56 at 1-2.

The United States Supreme Court has required "strict adherence" to the FTCA's exhaustion requirement. *McNeil v. United States*, 508 U.S. at 112-13. Thus, viewing the undisputed facts in the light most favorable to Plaintiff,[5] the undersigned finds that Defendant's contentions that this case was filed prematurely because of Plaintiff's submission of the Amended Tort Claim form should be rejected. The Amended Tort Claim form was never

---

[4] There is nothing in the record showing that Plaintiff's submission was transferred to the correct address: the BOP's Southeast Regional Office, despite the existence of a BOP program statement providing for a transfer when a claim is sent to the wrong location. P.S. 1320.06, § 7.

[5] If the court were to view this issue in a light most favorable to Defendant, it would find that Plaintiff's submission was effective either as a motion for reconsideration of BOP's determination on the original tort claim, *see* 28 C.F.R. § 14.9(b), or as an amended tort claim, 28 C.F.R. § 14.2(c). In either case, such a finding would then require the court to dismiss Plaintiff's entire Amended Complaint because by filing this case on August 26, 2015 it would be premature. Regardless of whether the August 5, 2015 submission would be considered a motion for reconsideration or an amended tort claim, either would have given the BOP an additional six-month period to consider Plaintiff's submission, thus extending the complaint-filing time to February 5, 2016 or the completion of BOP's review whichever was earlier.

properly presented to the BOP and was, therefore, ineffective to restart the six-month time period for filing a civil action under the FTCA either as a motion for reconsideration, 28 C.F.R. § 14.9(b) ("Upon the timely filing of a request for reconsideration the agency shall have 6 months from the date of filing in which to make a final disposition of the claim and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until 6 months after the filing of a request for reconsideration."), or as an amended claim, 28 C.F.R. § 14.2(c) ("Upon the timely filing of an amendment to a pending claim, the agency shall have six months in which to make a final disposition of the claim as amended and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until six months after the filing of an amendment.").[6] Plaintiff's original claim was denied on March 3, 2015 and he filed this case on August 26, 2015, *see Houston v. Lack*, 487 U.S. 266, 271 (1988) (pro se prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court), within six months of the final determination. Thus, Plaintiff's case was timely filed and, as previously stated, the merits of the properly exhausted slip and fall claim stated in the Amended Complaint will be discussed.

          2.        Merits of the Slip and Fall Claim

Under the FTCA, the court must determine liability in accordance with the substantive tort law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, because Plaintiff alleges negligence that occurred while he was housed in a BOP facility located in South Carolina, the substantive law of South Carolina controls. Accordingly, because

---

[6] Since the Amended Tort Claim form was never properly submitted, the attempted increase in the damages claim from $100,000.00 to $550,000.00 was ineffective. Because the only sum-certain properly presented to the BOP was $100,000.00, that is the full amount of damages which Plaintiff may recover if his slip and fall claim is successful. *See* 28 U.S.C. § 2675(b); *Kielwien v. United States*, 540 F.2d 676, 680-81 (4th Cir. 1976); *Hargett v. Fed. Bureau of Prisons*, No. 9:07-0832-CMC-GCK, 2007 WL 3178185, at *6 (D.S.C. Oct. 5, 2007), *report and recommendation adopted*, 2007 WL 3230143 (D.S.C. Oct. 26, 2007).

Plaintiff's Amended Complaint contains allegations concerning a slip and fall that occurred while he was housed in a BOP facility located in South Carolina, the substantive law of South Carolina controls.

To recover in a negligence claim, "a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000). A plaintiff may show an affirmative legal duty of care arising from a statute if the plaintiff is a member of the class of persons the statute is intended to protect, and the essential purpose of the statute is to protect the plaintiff from the kind of harm he suffered. *Rayfield v. S.C. Dep't of Corr.*, 374 S.E.2d 910, 914 (S.C. Ct. App. 1988). In this case the BOP owes Plaintiff an affirmative legal duty in accordance with 18 U.S.C. § 4042, which provides that the BOP "shall . . . provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). For purposes of a FTCA claim, the duty is one of "reasonable care." *See Johnson v. U.S. Gov't*, 258 F. Supp. 372, 376 (E.D. Va. 1966) (holding that duty of care "only requires the exercise of ordinary diligence under the circumstances."); *see also Beckwith v. Hart*, 263 F. Supp. 2d 1018, 1022 (D. Md. 2003). To survive summary judgment, Plaintiff is required to show negligence with reasonable certainty, not through mere conjecture, and he may not attempt to prove negligence through the doctrine of *res ipsa loquitur*. *Ajaj v. United States*, 479 F. Supp. 2d 501, 549 (D.S.C. 2007). South Carolina law holds that "[a] determination of negligence, standing alone, is a far cry from a determination of liability. Liability encompasses all elements of a negligence claim, including damages proximately caused by the alleged negligence." *Hinds v. Elms*, 595 S.E.2d 855, 857 (S.C. Ct. App. 2004). A breach of duty exists

when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed. *Horne v. Beason*, 331 S.E.2d 342, 344 (S.C.1985). The damages sustained must be shown to have been proximately caused, i.e. causally connected, to the breach of duty in order to warrant a recovery. *Id*. The existence of actionable negligence depends not upon what actually happened, but upon what reasonably might have been expected at the time, and not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man. *Id*. Prison officials are expected to perform their duty, avoid negligence, and foresee that certain acts might cause injury to others. *Id*. at 345. However, they cannot be expected to be "a fortuneteller." *Id*. Mere foreseeability of harm, in the absence of a duty to prevent the injury, is an insufficient basis for liability. *S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc.*, 346 S.E.2d 324, 325 (S.C. 1986). Proximate cause requires proof of causation in fact and legal cause; causation in fact is proved by establishing injury would not have occurred "but for" the defendant's negligence, while legal cause is proved by establishing foreseeability. *Seals by Causey v. Winburn*, 445 S.E.2d 94, 96 (S.C. Ct. App. 1994); *Hill v. York Cnty. Sheriff's Dep't.*, 437 S.E.2d 179, 182 (S.C. Ct. App. 1993).

Insofar as premises liability in the prison context is concerned, several courts have held that a prisoner's status is most closely analogous to that of an invitee. *See, e.g.*, *Namer v. United States*, No. 2:10-cv-00112-JTK, 2012 WL 1036125, at *2 (E.D. Ark. March 28, 2012); *Carson v. Corr. Corp. of Am.*, No. 10-cv-1329-REB-BNB, 2011 WL 1656509, at *3 (D. Colo. May 3, 2011) (collecting cases). Generally, premises liability claims can arise on behalf of invitees or licensees against owners, possessors, or occupiers of property. As the South Carolina Court of Appeals reiterated in *Sides v. Greenville Hospital Systems*:

> A property owner owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for injuries

> resulting from any breach of such duty. The property owner has a duty to warn an invitee only of latent or hidden dangers of which the property owner has or should have knowledge. *A property owner generally does not have a duty to warn others of open and obvious conditions*, but a landowner may be liable if the landowner should have anticipated the resulting harm.

607 S.E.2d 362, 365 (S.C. Ct. App. 2004) (emphasis added) (citations omitted). In order to establish liability, a plaintiff must show either (1) that the injury was caused by a specific act of the defendant which created the dangerous condition, or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it. *Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728, 729 (S.C. 2001); *Legette v. Piggly Wiggly, Inc*., 629 S.E.2d 375, 579 (S.C. Ct. App. 2006). There has been a traditional reluctance in South Carolina to hold owners liable for natural conditions. *Ford v. S. C. Dep't of Transp.,* 492 S.E.2d 811 (S.C. Ct. App. 1997) (fallen tree across state highway in rural area was a natural condition); *see also Cantrell v. Green*, 397 S.E.2d 777 (S.C. Ct. App. 1990). Finally, a landowner generally does not owe a duty to warn others of open and obvious conditions on the property. *Larimore v. Carolina Power & Light*, 531 S.E.2d 535, 539 (S.C. Ct. App. 2000) (citing *Meadows v. Heritage Village Church & Missionary Fellowship, Inc*., 409 S.E.2d 349 (S.C. 1991)); *see Hackworth v. United States*, 366 F. Supp. 2d 326 (D.S.C. 2005).

With respect to slips and falls in inclement weather conditions, at least one South Carolina trial court has relied on 62A Am. Jur. 2d *Premises Liability* § 699 for the proposition that as a general rule, the premises owner owes no duty to pedestrians to keep the public sidewalk in front of his premises free from natural accumulations of snow and ice absent actual or constructive knowledge. *Johnson v. Estate of Lucas*, 2006 WL 4911570 (S.C.C.P. 2006) (Trial

Order).[7] This is because such conditions appear with a frequency and suddenness which defy prevention and correction. *Id*. "[A] premise owner will not be held negligent where there is ice or snow on his premises as the result of natural accumulation and the condition is as well known to the invitees as to the owner." *Id*. Many jurisdictions, where snow is more common, allow what is known as "The Connecticut Rule" or "the storm-in-progress" doctrine. The Connecticut Rule was first iterated in *Reardon v. Shimelman*, 128 A. 705 (Conn. 1925) and was later defined in *Kraus v. Newton*, 558 A. 2d 240 (Conn. 1989), where the court held that:

> in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical.

*Id*. at 243.

Under the *Restatement of Torts*, an owner or possessor of land has an affirmative duty to exercise reasonable care in inspecting and maintaining the premises in a reasonably safe condition to those individuals entering the land as business invitees or guests. *Restatement (Third) of Torts* § 51 (Am. Law Inst. 2016). However, in those jurisdictions recognizing the

---

[7] This trial court order is the only factually similar South Carolina state court authority cited by either party, and independent research has not disclosed any other South Carolina personal injury case arising from a slip and fall resulting from of icy and snowy conditions on a landowner's premises. Despite Plaintiff's contention otherwise, in absence of controlling South Carolina authority, this court may rely on persuasive authority from other jurisdictions that have addressed similar factual scenarios. *See Reid v. Life Ins. Co. of N. Am.*, 718 F.2d 677 (4th Cir. 1983) ("In the determination of question of first impression, decisions of courts of other jurisdictions are persuasive authority in South Carolina."); *Tunnell v. Ford Motor Co.*, 385 F. Supp. 2d 582, 585 (W.D. Va. 2005) (As with any area of law, persuasive authority in the form of case law from other jurisdictions and restatements is instructive in identifying Virginia common law rules.); *Corbin v. Washington Fire & Marine Ins. Co.*, 278 F. Supp. 393, 395 (D.S.C. 1968) (court may resolve an issue by reliance on "the law of South Carolina and by such persuasive authority as other jurisdictions may supply").

storm-in-progress doctrine, this general rule will not apply when snow and/or ice are present. Courts have acknowledged that it is unreasonable to expect property owners to remove frozen precipitation as it falls in an attempt to eliminate all risk of injury. *E.g.*, *Mattson v. St. Luke's Hosp.,* 89 N.W.2d 743, 745 (Minn. 1958); *Locke v. Happy Chef*, Nos. 1999-285, 9-515, 98-2121, 1999 WL 1020728, at \*\*5,6 (Iowa Ct. App. Nov. 10, 1999).

The storm-in-progress doctrine is based on the principle that there is no liability for injuries related to falling on accumulated snow and ice until after the storm has ceased, in order to allow workers a reasonable period of time to clean the walkways. *Powell v. MLG Hillside Assocs., L.P.*, 737 N.Y.S.2d 27 (N.Y. App. Div. 2002). The rule is designed to relieve the workers of any obligation to shovel snow while continuing precipitation or high winds are simply re-covering the walkways as fast as they are cleaned, thus rendering the effort fruitless. Where the evidence in the record is clear that the accident occurred while the storm was still in progress, defendants may avail themselves of the rule as a matter of law. *Id.*; *see also Battle v. George Washington Univ.*, 871 F. Supp. 1459 (D.D.C. 1994); *Swann v. Flatley*, 749 F. Supp. 338 (D. Mass. 1990); *Gulas v. Ratliff*, 216 So.2d 278 (Ala. 1968); *Woods v. Prices Corner Shopping Ctr. Merchants Ass'n*, 541 A.2d 574 (Del. Super. Ct. 1988); *Jones v. Hansen*, 867 P.2d 303 (Kan. 1994); *Mattson v. St. Luke's Hosp. of St. Paul,* 89 N.W.2d 743 (Minn. 1958); *Downes v. Equitable Life Assurance Soc'y*, 617 N.Y.S.2d 986 (N.Y. App. Div. 1994); *Terry v. Cent. Auto Radiators, Inc.*, 732 A.2d 713 (R.I. 1999); *Mary Washington Hosp. v. Gibson*, 319 S.E.2d 741 (Va. 1984).

Other jurisdictions follow the Massachusetts Rule, or Natural-Accumulation Doctrine, which imposes no duty on the landowner or occupier of land to remove or take other steps to protect tenants or invitees from the dangers associated from the natural accumulation of snow

15

and ice. This approach traces itself back to the late 19th century and has more recently been described in *Swann v. Flatley*, 749 F. Supp. at 341. The Massachusetts line of cases is an adherence to the common law conception of the duty of a landlord where snow and ice are understood to be temporary obstructions for which a landlord is not held liable. *Durkin v. Lewitz*, 123 N.E.2d 151 (Ill. App. Ct. 1954). This rule is even less stringent than the Connecticut rule, which follows the *Restatement of Torts*. It is followed, however, in a large number of states. *Wilson v. Gorski's Food Fair*, 554 N.E.2d 412 (Ill. App. Ct. 1990); *Stamatakis v. Kroger Co.*, 328 N.W.2d 554 (Mich. Ct. App. 1982); *Gilligan v. Villanova Univ.*, 584 A.2d 1005 (Pa. Super. Ct. 1990); *Ritzman v. Kashulines*, 490 A.2d 792 (N.H. 1985); *Longenberger v. Collins Food*, 368 N.E.2d 85 (Ohio Ct. App. 1977).

In *Adams v. United States*, No. 5:11-cv-660, 2013 WL 4742880 (S.D.W. Va. Sept. 3, 2013), the United States District Court found against a federal inmate in an FTCA case that is quite similar to this case. In *Adams*, there was a snow fall at a federal prison in West Virginia and even though the prison attempted to remove snow and ice, the continuing nature of the storm made the walkway re-freeze. *Id*. at *10. The plaintiff/inmate traversed the walkway and he slipped and fell, injuring himself. *Id*. The court found that the icy conditions of the walkway were open and obvious. *Id*. Citing state case law, the court found that the prison staff was under "no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." *Id*. It further stated that "a 'foot-traveler' is required to exercise increased care in icy conditions." *Id*. The court also noted that there was no evidence that anyone else slipped and fell due to the icy conditions. *Id*. The court concluded that the plaintiff in that case failed to exercise due care with regard to the open and obvious dangerous conditions, and no proof of negligence was established against the prison. *Id*. Additionally, applying the Connecticut rule as used in West Virginia, the

court found that a landowner does not have a duty to remove snow or ice during the pendency or progress of a snowstorm. *Id*. Plaintiff's case fails for similar reasons.

In his Amended Complaint, Plaintiff admits that the conditions on February 12, 2014 at FCI-Edgefield were caused by "severe weather resulting in heavy snow and ice accumulation." ECF No. 40 at 2, 3. He stated that the inmates were unable to go to the cafeteria for breakfast due to the weather conditions. *Id*. He admits that he was aware of the weather conditions because he observed a "skeleton inmate work detail" attempting to "shovel the sidewalks . . ." when he was "enroute" to the dining room for lunch. *Id*. In his Response to Defendant's Motion, Plaintiff indicates that he did not leave to go to the dining room until "approximately 11:00 A.M" and that he slipped and fell at 11:40 A.M. while he "was walking back to his housing unit from the dining hall . . . ." ECF No. 53 at 2. Therefore, it is clear from the undisputed facts that Plaintiff observed the condition of the walkway at most forty minutes before the slip and fall and that the icy conditions were known, open, and obvious to Plaintiff by his own admission. Also, Plaintiff does not deny that the storm was still in progress when he slipped and fell as shown by the affidavit of Lt. K. Adkison who stated that the walkways at FCI-Edgefield had been shoveled and bags of salt placed down in an attempt to clear the walkways, but the storm continued after these attempts were made and "continued throughout the day." ECF No. 46-6 at 1, 2. Furthermore, Plaintiff indicates that he walked to the dining hall in the icy conditions and then slipped and fell as he returned to his housing unit. ECF No. 40 at 2.

In its Motion, Defendant urges that it cannot be held liable for Plaintiff's wrist injury because it did not breach any duty owed to Plaintiff because the snowy and icy conditions on which he slipped and fell were open and obvious and resulted from a storm that continued during the entire day and was in progress at the time of the slip and fall. ECF No. 46 at 19-21. Petitioner

17

does not deny that the storm was in progress at the time of the slip and fall and does not deny that the icy and snowy conditions were known to him. Instead, he asserts that the BOP personnel at FCI-Edgefield should not have sent the inmates out for lunch and should have given them "bag lunches" instead. ECF No. 40 at 3. Plaintiff also denies that salt was put on the subject walkway as averred by Lt. K. Adkison, ECF No. 46-6 at 2, and asserts that only sand was spread. ECF No. 40 at 3. Plaintiff also points to the fact that officials at FCI-Edgefield ordered the inmates to traverse the icy walkway to go to lunch and argues that these orders distinguishes his case from the facts in the *Adams* case. ECF No. 53 at 5, 9. However, Plaintiff does not present any evidence to support his assertions and appears to rely only on his own allegations. This is not sufficient to raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e). There are no allegations of any concealed danger in any of Plaintiff's filings.

Having reviewed the parties' submissions and the applicable law, the undersigned finds that the undisputed facts show that not only was the condition of the walkway open and obvious, but Plaintiff was also familiar with the conditions of the walkway. Such notice and/or experience brings this case in line with the factual scenario in the *Adams* case cited above. The undisputed facts show that the danger created by the snowy and icy conditions at FCI-Edgefield on February 12, 2014 was open and obvious to Plaintiff, and under the applicable law cited above, the Defendant did not have a duty to remove the ice during the pendency of the storm. *See Larimore v. Carolina Power & Light*, 531 S.E.2d at 539 (no duty to warn of open and obvious conditions); *see also Adams v. United States*, 2013 WL 4742880, at * 10 (same; icy conditions). In absence of a showing of any breach of duty, there is no showing that Defendant was negligent, *see Bloom v. Ravoira*, 529 S.E.2d at 712, and therefore, Plaintiff's Amended Complaint should be dismissed.

III.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion to Dismiss or in the alternative for Summary Judgment, ECF No. 46, be **granted,** and that this case be dismissed with prejudice.

IT IS SO RECOMMENDED.

August 5, 2016                                              Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge

**The parties' attention is directed to the important notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 2317**
> **Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).